UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENNIFER YANG,                                     :
                                                   :
                          Plaintiff,               :        13-cv-2073 (NSR)
            -against-                               :
                                                   :        MEMORANDUM OPINION
NAVIGATORS GROUP, ,INC.,                            :        AND ORDER
                                                   :
                          Defendant.               :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

Plaintiff Jennifer Yang ("Plaintiff") commenced the instant action against her former

employer, Navigators Group, Inc. ("Defendant"), seeking monetary damages and reinstatement

for alleged violations of the anti-retaliation provision of Sarbanes-Oxley Act ("SOX"), 18 U.S.C.

§ 1514A, and the whistleblower protection provision of the Dodd-Frank Act ("DFA"), 15 U.S.C.

§ 78u-6(h)(1).[1]  In her Amended Complaint, Plaintiff asserts she was terminated because of her

complaints about Defendant's improper risk control procedures, which she reasonably believed

constituted shareholder fraud and violated securities laws and SEC rules and regulations.

Defendant now moves pursuant to Rule 12(c) for a judgment on the pleadings, asserting

that the Amended Complaint fails to state a claim upon which relief may be granted.  Defendant

asserts that (1) Plaintiff did not make disclosures to the Securities and Exchange Commission

("SEC") as purportedly required under the DFA to be deemed a whistleblower, and

(2) Plaintiff's communications to her supervisors were not required or protected under SOX.

Although Defendant answered the initial complaint, it has not filed an answer to the Amended

Complaint.

---

[1] The Amended Complaint and Proposed Second Amended Complaint allege violations of subsection (h)(1)(B),
which details the enforcement procedures, whereas subsection (h)(1)(A) provides the substantive prohibition of
retaliation.  The Court construes the pleadings liberally to allege a violation of subsection (h)(1)(A).

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/8/2014

Plaintiff cross-moves for leave to file a Second Amended Complaint which supplements factual allegations and purports to clarify the existing pleadings, but adds no new claims.  In opposition, Defendant asserts that (1) Plaintiff is not allowed to amend her pleading in opposition to a motion to dismiss, and (2) the proposed amended complaint would be futile because Plaintiff's communications were not protected conduct, because Plaintiff did not have a reasonable belief that Defendant was committing fraud, and because Plaintiff purportedly is not a whistleblower within the meaning of the DFA.  For the following reasons, Plaintiff's cross-motion is granted and Defendant's motion is denied.

## I. FACTUAL BACKGROUND

The following facts are alleged in the Amended Complaint and, where noted, in the Proposed Second Amended Complaint ("PSAC").  Plaintiff was employed as Defendant's Group Chief Risk Officer from June 25, 2012, through November 2, 2012.  In this position, she reported to Defendant's chief financial officer, Ciro DeFalco ("DeFalco").  She left her previous position as Vice President and Regional Capital Management Director of another company to take the position with Defendant.

Plaintiff began her employment by learning the company business and existing enterprise risk management practice.  She was initially tasked with developing a plan to improve the risk management function.  Plaintiff allegedly noticed that in past presentations to Defendant's board and to the rating agencies S&P and AM Best, the market risk assessments of certain investment portfolios appeared low considering their asset classes.  She investigated further using outside investment consultants and found that risk models used for certain asset classes were improper. The result was substantial underestimation of investment risks.  Defendant's investments included municipal bonds, for which the old model did not account for callable features, and

2

structured finance products, for which the old model ignored underlying collateral.  Municipal

bonds and structured finance products accounted for roughly 60% of Defendant's entire

portfolio.  In a July 2012 meeting, Plaintiff informed DeFalco of her findings and expressed

concern over Defendant's investment risk.  DeFalco ignored her concerns and insisted that risk

was being properly assessed.  Nevertheless, Plaintiff allegedly acquired resources to properly

assess market risk.

In late July or early August 2012, DeFalco sought to include purportedly improper

market risk assessment results in a report to Defendant's board of directors.  When Plaintiff

cautioned him that the improper material should not be presented to the board, DeFalco told her

she expressed her concerns too late.  Plaintiff then requested to attend the board's finance

committee meeting, because that committee discusses investment risks.  However, DeFalco did

not allow Plaintiff to attend even though the prior Chief Risk Officer attended such meetings.

According to the PSAC, DeFalco also did not allow Plaintiff to attend the board of directors

meeting at which directors would discuss enterprise risk management issues.

At some point, Plaintiff learned that five management committees shared responsibility

for Defendant's risk management.  These included the Group Enterprise Risk Management

Steering Committee ("Steering Committee") and four subcommittees: the Underwriting and

Claims Risk Committee, the Compliance and Governance Risk Committee, the Finance and

Credit Risk Committee, and the Operational Risk Committee.  Plaintiff chaired the Steering

Committee, which included almost all the senior executives.  Plaintiff realized that no committee

was responsible for controlling reserving risk, one of the most significant risks faced by

insurance companies.  She also noted that the Finance and Credit Risk Committee had not met

for almost a year, while Underwriting and Claims Risk Committee had not met for a long time

and was out of compliance with its charter.  According to the PSAC, neither the lack of meetings nor the failure of any committee to handle reinsurance recoverable was disclosed to rating agencies or in Defendant's SEC filings.  According to the PSAC, Defendant's 10-K falsely represented that credit risk arising from reinsurance recoverable was actually monitored by a subcommittee.  All this Plaintiff allegedly reported to DeFalco.

In or around August 2012, Defendant's board of directors met to discuss emerging risk management, which the rating agency S&P assessed as weak.  Plaintiff attended the meeting, and DeFalco emailed her immediately afterwards praising her performance.  However, Defendant's Chief Underwriting Officer and previous Chief Risk Officer, Clay Bassett ("Bassett"), accused Plaintiff of inviting questions from board members and insisted that she represented management's interests in front of the board.  Plaintiff replied that she was obliged to truthfully present information to the board, and that she had fiduciary duties to the company and its shareholders.

In September 2012, Plaintiff expressed to DeFalco that Defendant did not possess the proper skill set to manage market and credit risks, and she told DeFalco that certain subcommittees were out of compliance.  She proposed solutions to risk management issues, including hiring additional personnel.  Plaintiff told DeFalco and Bassett that Defendant's market risk was too high to justifiably maintain an A rating from S&P, as it was over twice as large as the capital buffer Defendant wanted to maintain.  She also noted that the aggregate catastrophe risk was at or beyond Defendant's risk appetite.  This angered Bassett because, according to the PSAC, he was responsible for catastrophe risk.

Plaintiff, in developing an action plan to address S&P's concerns over Defendant's operational risk control, allegedly sought certain additional information from DeFalco and

4

Bassett but received nothing.  Becoming concerned that the lack of regular risk management processes and Defendant's high aggregated risks threatened Defendant's S&P rating, Plaintiff shared her concerns with Defalco.  DeFalco dismissed the concerns, saying a rating downgrade would not be the end of the world.  Plaintiff shared the same rating downgrade concerns with Vincent Tizzio ("Tizzio"), president and CEO of a related company called Navigators Management Company.  Tizzio acknowledged that a downgrade would cause significant damage to the business and agreed to use his monthly management meeting to discuss risk matters.

In September 2012, with a Steering Committee meeting one week away, DeFalco instructed Plaintiff to cancel the meeting because he and Bassett had not completed their assignments from the previous meeting.  Plaintiff declined, saying the committee would be out of compliance if the meeting were not held.  DeFalco then asked Plaintiff to postpone the agenda items on which he and Bassett were to report.

Plaintiff angered Bassett by insisting that the Underwriting and Claims Risk Committee meet.  Bassett accused her of improperly pressuring him by mentioning Defendant's CEO in an email.  Bassett also accused Plaintiff of turning Steering Committee meetings into battle grounds by showing quantitative results and sharing an S&P report identifying weaknesses in risk control. Bassett then stated he would watch Plaintiff very closely.  Plaintiff alleges it took three months of pressure to finally get Bassett to hold an Underwriting and Claims Risk Committee meeting on October 25, 2012.  This meeting occurred after Plaintiff worked out an alternative solution with Tizzio.  DeFalco never held a Finance and Credit Risk Committee meeting while Plaintiff worked for Defendant. DeFalco instead recommended reducing the number required of meetings per year for each committee.

5

In October 2012, Plaintiff expressed to Defendant's general counsel her concerns over the failure of risk management subcommittees to hold meetings. She also discussed with Defendant's internal audit director concerns over the lack of regular risk reporting and monitoring. The internal audit director confirmed there was no regular reporting or monitoring, despite the fact that Defendant's presentations to rating agencies claimed internal audit had been an important part of the company's risk management.

Also in October 2012, Plaintiff received risk assessment results from Defendant's investment consultant ("first consultant") whose assessments had been presented to Defendant's board and to rating agencies in the past. She also received assessment results from a second independent investment consultant ("second consultant"). The second consultant assessed Defendant's market risk at $95 million, whereas the first consultant placed Defendant's risk at $40 million. Allegedly, the actual risk was greater than Defendant's $80 million capital buffer, jeopardizing the A rating from S&P. On October 25, 2012, Plaintiff forwarded the second consultant's risk assessment to DeFalco and Defendant's CEO. DeFalco was angered because he did not fully vet Plaintiff's work product, and he accused Plaintiff of using the second consultant without his permission. Plaintiff alleges, however, that she had discussed with DeFalco numerous times she was using both consultants and that he had encouraged such use.

On October 26, 2012, DeFalco asked Plaintiff not to share any information with the CEO because the CEO would read it and ask questions. The same day, she presented the second consultant's results to the Steering Committee. At the meeting, DeFalco remained unconcerned with the company's risk profile. Executives at the Steering Committee meeting engaged in a heated debate over the risk measurement matrix.

During the days leading up to November 2, 2012, Plaintiff was preparing an enterprise risk management report for an upcoming board of directors meeting.  Allegedly, she was going to report that previous market risk assessment results were grossly underestimated, that the second consultant's report showed Defendant's risk could jeopardize the A rating from S&P, that subcommittees were out of compliance, that risks assigned to subcommittees were not properly managed, that prior risk management did not manage reserve risk, that risk reports were not generated to ensure exposure was within Defendant's risk appetite, that the lack of regular control processes and the high risk potential jeopardized the S&P rating, that she was concerned about resistance from other executives to new risk management initiatives, and (according to the PSAC) that Defendant's SEC filings and presentations to the board and rating agencies did not accurately reflect Defendant's risk management program due to omissions of material fact.

On November 2, 2012, DeFalco informed Plaintiff that she was terminated because she did not fit into Defendant's culture.  Plaintiff filed the instant action on March 28, 2013, alleging retaliatory firing after repeated internal reporting of Defendant's improper risk control practices which constituted shareholder fraud and violated federal securities rules and regulations.

## II. LEGAL STANDARDS

### A. Motion to Amend Pleadings

A party may amend a pleading once as a matter of course or at any time before trial with leave of the court. Fed. R. Civ. P. 15(a)(1)–(2).  If a party seeks leave to amend a pleading, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non[-]movant of prejudice or bad faith." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344,

7

350 (2d Cir. 1993)).  "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not

provide a basis for the district court to deny the right to amend."  *Ruotolo v. City of New York*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843,

856 (2d Cir. 1981)); *accord Block*, 988 F.2d at 350.  Thus, if the underlying facts and

circumstances upon which the moving party relies support a claim or defense sought to be added,

the party should generally be allowed to test that claim or defense on the merits.  *United States*

*ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1254

(2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *accord EEOC v. Nichols*

*Gas & Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007).  Nonetheless, leave to amend may

properly be denied "on grounds of futility if the proposed amendment fails to state a legally

cognizable claim or fails to raise triable issues of fact."  *AEP Energy*, 626 F.3d at 725–26

(quoting *State Teachers Ret. Bd. v. Fluor Corp*, 654 F.2d 843, 846 (2d Cir. 1981)); *accord*

*Ruotolo*, 514 F.3d at 191 (quoting *Foman*, 371 U.S. at 182); *cf. State Teachers Ret. Bd.*, 654 F.2d

at 856 ("Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of

amendment, and perhaps most important, the resulting prejudice to the opposing party.").

### B. Motion for Judgment on the Pleadings or Motion to Dismiss

Under the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P.

12(c).  Here, as Defendant has not answered the Amended Complaint, Defendant's motion is

more properly construed as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

Regardless, when deciding motions under Rule 12(c), courts "employ[] the same . . . standard

applicable to dismissals pursuant to [Rule] 12(b)(6)," *L-7 Designs, Inc. v. Old Navy, LLC*, 647

F.3d 419, 429 (2d Cir. 2011) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009))

8

(internal quotation marks omitted).

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Although a court "must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  When determining the plausibility of a complaint, "[i]n addition to allegations in the complaint itself, the Court may consider documents attached as exhibits and documents incorporated by reference in the complaint." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y. 2013) (citing *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 234 (2d Cir. 2008)).

**IV. NO UNDUE DELAY IF SECOND AMENDED COMPLAINT FILED**

Defendant argues briefly that Plaintiff cannot amend her complaint in response to a motion to dismiss. However, Defendant relies solely on cases which state that "a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss." *Connolly v. Havens*, 763 F. Supp. 6, 8 n.1 (S.D.N.Y. 1991). In *Connolly*, the court refused to consider factual allegations asserted for the first time in the plaintiff's opposition brief. *Id.* Here, however, Plaintiff has filed a cross-motion for leave to amend the complaint, an action clearly allowed by Rule 15(a), and attached the PSAC as an exhibit thereto. Thus, Defendant's argument is unavailing, because Plaintiff is not relying on allegations appearing only in her brief in opposition to Defendant's motion.

Defendant then asserts the Court should deny Plaintiff's motion because Plaintiff "knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly [because Plaintiff] offers no excuse for the delay." *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) (Peck, M.J.) (report and recommendation). *Berman*, however, relies on cases which discuss delay when the moving party knew the facts beforehand and where the delay was prejudicial because of the passage of time after significant discovery had taken place. *See Bymoen v. Herzon, Heine, Geduld, Inc.*, No. 88 CIV. 1796 (KMW), 1991 WL 95387, at *1–2 (S.D.N.Y. May 24, 1991) (where plaintiff moved to amend complaint to add breach of contract claim three years after previous amended complaint filed and after summary judgment motion filed, having new counsel was not valid reason for delay and amendment found unduly prejudicial); *Priestly v. Am. Airlines, Inc.*, No. 89 Civ. 8265 (JMC), 1991 WL 64459, at *2 (S.D.N.Y. Apr. 2, 1991) (where plaintiff sought to add claim of willful misconduct based on facts gleaned from multiple depositions, including plaintiff's, delay of 15

months after case initially filed and of 12 months since plaintiff's deposition was undue and caused undue prejudice because plaintiff knew the facts upon which willful misconduct claim was based when he filed initial complaint).  *Berman* also relies on a treatise citing, in its most recent edition, cases in which there was an inordinate delay with no satisfactory explanation.  *See* 1 M. Silberberg, *Civil Practice in the Southern District of New York* § 6.28 (2013-2014 ed.) (citing, *inter alia*, *Dais v. Lane Bryant, Inc.*, No. 97 Civ. 2011 (PKL) (RLE), 2000 WL 145755 (S.D.N.Y. Feb. 8, 2000) (finding undue delay where plaintiff sought to add gender discrimination claim after close of discovery though plaintiff knew of claim's existence before commencement of litigation); *Paper Sales Corp. v. James River Corp. of Va.*, No. 87 CIV. 7638 (MBM), 1990 WL 96097 (S.D.N.Y. July 9, 1990), *aff'd*, 930 F.2d 909 (2d Cir. 1991) (finding undue delay where plaintiff sought to add party and nine new claims nine months after close of discovery)).

Here, Plaintiff's delay in adding additional facts does not amount to undue delay. Defendant does not demonstrate, or even argue, that it will be prejudiced by the addition of these facts, as it must show in order to defeat the motion to amend because of delay.  *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  Since limited discovery has taken place as of the time Plaintiff filed the instant motion, and since no new claims or parties are being added, no prejudice will result.  Accordingly, the motion to amend will not be denied on the basis of delay.

## V. FILING SECOND AMENDED COMPLAINT WOULD NOT BE FUTILE

In determining whether a proposed amended complaint would be futile, a court must decide whether it states a legally cognizable claim for relief.  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010); *Ruotolo*, 514 F.3d at 191.  In so doing, a court applies the Rule 12(b)(6) motion to dismiss standard.  *EEOC v. Nichols Gas &*

11

*Oil, Inc.*, 518 F. Supp. 2d 505, 508 (W.D.N.Y. 2007) (citing *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119, 123 (E.D.N.Y. 2003)).

### A. Whistleblower Protection Under Sarbanes-Oxley Act

The Sarbanes-Oxley Act ("SOX") prohibits publicly traded companies from, *inter alia*, discharging an employee

> because of any lawful act done by the employee—
>
> > (1) to provide information . . . regarding any conduct which the employee *reasonably believes* constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], *any* rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information . . . is provided to . . .
> > . . .
> > (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . .

18 U.S.C. § 1514A(a)(1)(C) (emphasis added).[2]  An employee who alleges a violation of this provision must first file a complaint with the Department of Labor, but may thereafter bring suit if the Secretary of Labor does not issue a final decision within 180 days.  *Id.* § 1514(b)(1); *Guyden v. Aetna, Inc.*, 544 F.3d 376, 380 (2d Cir. 2008).  To state a claim under § 1514A, a plaintiff must allege that "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."  *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013) (quoting *Harper v. Charter Commc'ns, Inc.*, 558 F.3d 722,

---

[2] Defendant argues that the SEC rules and regulations purportedly violated must be "regulations prohibiting fraud." *Livingston v. Wyeth*, 520 F.3d 344, 351 n.1 (4th Cir. 2008).  No Second Circuit case has so held.  The First Circuit has noted that "many . . . violations of SEC rules . . . will also involve fraud" but did not hold that only those rules involving fraud are contemplated by § 1514A.  *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009).  As the statute plainly contemplates reporting of violations of "any rule or regulation," the Court declines to limit the scope of the statute to only SEC rules and regulations prohibiting fraud.

723 (7th Cir. 2009)) (internal quotation marks omitted); *accord* 49 U.S.C. § 42121(b), *made applicable by* 18 U.S.C. § 1514A(b)(2); 29 C.F.R. 1980.104(e)(2).  Significantly, "a whistleblower need not show that the corporate defendant committed fraud to prevail in her retaliation claim under § 1514A."  *Guyden*, 544 F.3d at 384; *accord Barker v. UBS AG*, 888 F. Supp. 2d 291, 298 (D. Conn. 2012).

### 1. Protected Activity

Defendant contends that Plaintiff's alleged communications to superiors and other employees do not amount to protected activity under SOX.  Defendant reasons that the communications did not "definitively and specifically relate to [one] of the listed categories of fraud or securities violations [in] 18 U.S.C. § 1514A(a)(1)."  *Vodopia v. Koninklijke Philips Elecs., N.V.*, 398 F. App'x 659, 663 (2d Cir. 2010) (summary order).

In the Second Circuit "[r]ulings by summary order do not have precedential effect."  2d Cir. Local Rule 32.1.1(a).  Thus, the Second Circuit's adoption of the "definitive and specific" standard is not binding.  Additionally, a year after the *Vodopia* decision, the Administrative Review Board of the Department of Labor ("ARB"), which reviews determinations in administrative proceedings under SOX, held that the "definitive and specific" standard is "inappropriate" because it "presents a potential conflict" with the statutory language prohibiting discharge for providing information "the employee reasonably believes constitutes a SOX violation."  *Leshinsky v.Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 442–43 (S.D.N.Y. 2013) (quoting *Sylvester v. Parexel Int'l LLC*, ARB Case No. 07-123, 32 IER Cases 497, 509, 2011 WL2165854, at *15 (ARB May 25, 2011)) (internal quotation marks omitted).  The ARB determination—that the "definitive and specific" standard is inapplicable—is entitled to some level of deference in the federal courts, *see Leshinsky*, 942 F. Supp. 2d at 443 (citing *Wiest v.*

*Lynch*, 710 F.3d 121, 133 (3d Cir. 2013) (giving *Chevron* deference to ARB's rejection of

"definitive and specific" test in *Sylvester*) and *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d

582, 589 (S.D.N.Y. 2012) (applying *Mead* deference)); *Barker v. UBS AG*, 888 F. Supp. 2d 291,

296 n.2 (D. Conn. 2012) (citing *Day v. Staples, Inc.*, 555 F.3d 42, 54 n.7 (1st Cir. 2009))

(acknowledging application of *Chevron* deference to ARB decisions), and at least one judge in

this district determined to follow the ARB's interpretation, *Leshinsky*, 942 F. Supp. 2d at 443;

*contra Andaya v. Atlas Air, Inc.*, No. 10 CV 7878 (VB), 2012 WL 1871511, at *3, (S.D.N.Y.

Apr. 30, 2012) (citing *Vodopia*, 398 F. App'x at 663).

  The Court makes no determination at this time whether the "definitive and specific"

standard applies.  Regardless of whether it applies, the employee is not required to communicate

*to the employer* which laws the employer's conduct allegedly violated.  *Andaya*, 2012 WL

1871511, at *3 (citing *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 322 (S.D.N.Y.

2006)).  The employee's communication need only "identify the specific *conduct* that the

employee believes to be illegal."  *Ashmore v. CGI Grp. Inc.*, No. 11 Civ. 8611 (LBS), 2012 WL

2148899, at *6 (S.D.N.Y. June 12, 2012) (emphasis added) (quoting *Welch v. Chao*, 536 F.3d

269, 276 (4th Cir. 2008)).  Thus, Defendant's assertion—that the PSAC does not provide any

allegations plausibly suggesting that Plaintiff "communicated to Defendant that it had violated

[certain SEC] rules" enumerated in Plaintiff's brief,[3] (Def.'s Br. in Opposition to Mot. to

Amend, at 7)—is of no moment.

  Here, according to the PSAC, Plaintiff reported to her supervisor DeFalco that risk

models Defendant had been using were "grossly improper" for a number of asset classes, (PSAC

¶¶ 13, 15), resulting in substantially underestimated investment risks, (*id.* ¶ 14).  Plaintiff

---

[3] I.e., SEC Rules 14a-9 and 12b-20, and 17 C.F.R. Part 229.

allegedly told DeFalco that two risk subcommittees had not met for nearly a year, that no risk subcommittee was dealing with reinsurance recoverable risk, and that neither issue was disclosed in Defendant's presentations to rating agencies or in its SEC filings.  (*Id.* ¶ 26.)  Plaintiff additionally told DeFalco that Defendant's 10-K filing stated falsely that a subcommittee handled reinsurance recoverable risk.  (*Id.*)  She allegedly told Defendant's general counsel that subcommittees were not meeting as required by the company and as represented by Defendant in SEC filings.  (*Id.* ¶ 52.)  She also told Defendant's internal audit director there was a lack of regular risk reporting and monitoring.  (*Id.* ¶ 53.)  The proper disclosure in SEC filings of Defendant's investment risk practices certainly seems to be information which may be necessary to make required statements to the SEC "not misleading."  17 C.F.R. § 240.12b-20.  It also seems Defendant's failure to state on its Form DEF 14A filings that the subcommittees did not actually meet may be an omission of material fact the disclosure of which would have made the proxy statements "not false or misleading."  *Id.* § 240.14a-9(a).  Thus, in complaining that relevant information did not appear in these SEC filings as required, Plaintiff allegedly implicated SEC rules violations which are sufficient to state a plausible claim under SOX.[4]

Defendant argues further that Plaintiff's communications could not possibly satisfy the SOX reporting requirements because Plaintiff was hired as the Chief Risk Officer, and reporting risk issues were "part and parcel of her job."  (Def.'s Br. in Opposition to Mot. to Amend, at 6.)  However, the ARB "has made clear that an employee may engage in protected activity even where the employee is discharging her duties."  *Barker*, 888 F. Supp. 2d at 297 (citing *Robinson v. Morgan-Stanley*, ARB Case No. 07-070, 2010 DOLSOX LEXIS 7, at *26–27 (ARB Jan. 10,

---

[4] The Court declines to entertain Plaintiff's wire fraud argument which appears only in her brief in support of the motion to amend the complaint.

2010)).  As ARB determinations are entitled to some deference, *see Lechinsky*, 942 F. Supp. 2d at 442, Defendant's job description argument is unavailing.

### 2. Reasonable Belief

Defendant argues that Plaintiff did not reasonably believe Defendant's practices were unlawful.  "To demonstrate that a plaintiff engaged in a protected activity, a plaintiff must show that [s]he had both 'a subjective belief and an objectively reasonable belief that the conduct [s]he complained of constituted a violation of relevant law.'"  *Leshinsky v.Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 444 (S.D.N.Y. 2013) (quoting *Welch v. Chao*, 536 F.3d 269, 275 (4th Cir. 2008); *accord Perez v. Progenics Pharm., Inc.*, 965 F. Supp. 2d 353, 363 (S.D.N.Y. 2013).  "In assessing the reasonableness of a plaintiff's belief regarding the illegality of the particular conduct at issue, courts look to the basis of the knowledge available to a reasonable person in the circumstances with the employee's training and experience."  *Perez*, 965 F. Supp. 2d at 364 (internal quotation marks and citation omitted).

The PSAC alleges that Plaintiff was the regional capital management director at her previous employer of five years, but otherwise does not allege the extent of her training and experience.  Nonetheless, the PSAC alleges that Defendant's risk assessments resulted in understating the risk of 60% of Defendant's assets to the board of directors and that other relevant risk-related information was not disclosed to the SEC and rating agencies.  As this information would allegedly affect the actions taken by the board of directors and logically influence investment decisions by shareholders, it is not implausible that Plaintiff believed Defendant's conduct constituted fraud on shareholders.  It is also not implausible that Plaintiff believed Defendant violated SEC rules by failing to disclose certain details of its risk management practices and by affirmatively providing misleading statements to the SEC in

required filings.  In any event, Plaintiff need not prove a violation of the law to state a claim under § 1514A.  *Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir. 2008).

Defendant argues that Plaintiff did not subjectively believe shareholder fraud was being committed because she did not explicitly say so.  Defendant also asserts that Plaintiff signed two documents certifying she knew nothing of fraudulent or untrue statements of material fact in certain financial information, and Defendant attaches the two documents as exhibits.  However, as previously noted, Plaintiff did not need to specify which laws she thought were violated: she needed only identify specific conduct she believed to be illegal.  *See Ashmore v. CGI Grp. Inc.*, No. 11 Civ. 8611 (LBS), 2012 WL 2148899, at *6 (S.D.N.Y. June 12, 2012) (quoting *Welch v. Chao*, 536 F.3d 269, 276 (4th Cir. 2008)).  The PSAC alleges she did so.  As to Defendant's proffered evidence, the documents are not referenced by or incorporated in the Amended Complaint or PSAC and Defendant has not answered the Amended Complaint, so they are not properly considered at this time.  *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 223 (S.D.N.Y. 2013).  Thus, Defendant does not demonstrate that the PSAC fails to state a claim based on Plaintiff's supposed lack of subjective belief that Defendant was violating pertinent laws.

Defendant finally contends that Plaintiff did not have an objectively reasonable belief that Defendant was committing fraud.  However, Defendant merely repeats its unavailing arguments that it was part of Plaintiff's job to identify risk management issues, which is all she did here, *see Barker v. UBS AG*, 888 F. Supp. 2d 291, 297 (D. Conn. 2012) (whether plaintiff's activity was required by job description is irrelevant), and that Plaintiff does not allege she specifically reported concerns of fraudulent and illegal activity, *see Ashmore*, 2012 WL 2148899, at *6 (plaintiffs need not identify which law they believe was broken, but need only identify conduct they believe to be illegal).  Defendant does not otherwise explain how it would be unreasonable

for someone with Plaintiff's training and experience to believe that using faulty risk models and falsely reporting to the SEC that certain risk was being managed did not violate SEC regulations or constitute shareholder fraud.  Thus, Defendant does not show that the PSAC fails to state a claim based on Plaintiff's supposed lack of objectively reasonable belief that Defendant was violating pertinent laws.

Accordingly, Plaintiff's motion to amend the complaint must be granted as to the SOX claim under 18 U.S.C. § 1514A, as such an amendment would not be futile.

### B. Whistleblower Definition Under Dodd-Frank Act

The Dodd-Frank Act ("DFA") prohibits employers from discharging

> a whistleblower . . . because of any lawful act done by the whistleblower—
> . . .
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 et seq.) . . . .

15 U.S.C. § 78u-6(h)(1)(A).  As previously discussed, disclosures protected under SOX include communications to "a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)."  18 U.S.C. § 1514A.  The DFA, however, limits the reach of its whistleblower protection.  The law defines "whistleblower" as "any individual who provides, or 2 or more individuals acting jointly who provide, information relating to a violation of the securities laws *to the [SEC]*, in a manner established by rule or regulation, by the [SEC]."  15 U.S.C. § 78u-6(a)(6) (emphasis added).  Defendant asserts that Plaintiff is not a "whistleblower" as defined by the DFA and interpreted by the Court of Appeals for the Fifth Circuit.  *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 625 (5th Cir. 2013).  Plaintiff, on the other hand, asserts that the definition of "whistleblower" read alongside the protection provision creates some ambiguity

about who is protected, such that the Court should give deference to the SEC's regulation

interpreting the statute.  Other courts in this district have deferred to the regulation.  *See, e.g.*,

*Ahmad v. Morgan Stanley & Co.*, No. 13 Civ. 6394 (PAE), 2014 WL 700339, at *4 n.5

(S.D.N.Y. Feb. 21, 2014) (publication in F. Supp. 2d pending); *Rosenblum v. Thomson Reuters*

*(Markets) LLC*, No. 13 Civ. 2219 (SAS), 2013 WL 5780775 (S.D.N.Y. Oct. 25, 2013)

(publication in F. Supp. 2d pending); *Murray v. UBS Sec., LLC*, No. 12 Civ. 5914 (JMF), 2013

WL 2190084 (S.D.N.Y. May 21, 2013).

> Under the SEC regulation promulgated in 2011:

> For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. § 78u-6(h)(1)), you are a whistleblower if

>> (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. § 1514A(a)) that has occurred, is ongoing, or is about to occur, and;

>> (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. § 78u-6(h)(1)(A)).

>> (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F-2(b)(1) ("Rule 21F-2").  According to the comments, "the statutory anti-

retaliation protections apply to three different categories of whistleblowers, and the third

category [which incorporates the SOX anti-retaliation provision] includes individuals who report

to persons and governmental authorities other than the [SEC]."  Securities Whistleblower

Protections & Incentives, 76 Fed. Reg. 34,300, 34,304 (June 13, 2011).  The SEC thus

recognizes a narrow exception to the requirement that employees report violations directly to the

SEC, based on the statutory language in 15 U.S.C. § 78u-6(h)(1)(A)(iii) which incorporates

reporting malfeasance to supervisors.  *Id.*  Rule 21F-2 was adopted shortly after the decision in

19

*Egan v. TradingScreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011), which held that in reading the whistleblower definition and the whistleblower protection provisions together, those "contradictory provisions . . . are best harmonized by reading [the] protection of certain whistleblower disclosures not requiring reporting to the SEC as a narrow exception to [the] . . . definition of a whistleblower as one who reports to the SEC." In so holding, the *Egan* court followed the rule that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Id.* (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).

After the promulgation of Rule 21F-2, another court in this district followed the SEC's interpretation using the two-step inquiry set out in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*[5]  *See Murray*, 2013 WL 2190084, at *4–5.  The *Murray* court found "ambiguity aris[ing] from the tension between Section 78u-6(a)(6), which limits the definition of 'whistleblower' to one who makes a disclosure to the SEC, and Section 78u-6(h)(1)(A)(iii), which contemplates a broader scope of protection."  *Murray*, 2013 WL 2190084, at *4.  The court also found the administrative interpretation reasonable and consistent with the decisions of the only other courts that considered the issue up to that time.  *Id.* at *5 (citing *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106–07 (D. Colo. 2013); *Kramer v. Trans-Lux Corp.*, No. 11 Civ. 1424 (SRU), 2012 WL 4444820, at *3–5 (D. Conn. Sept. 25, 2012); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 993–95 (M.D. Tenn. 2012); *Egan*, 2011 WL 1672066, at *5).  The *Murray* court did acknowledge as reasonable the defendant's alternative interpretation

---

[5] 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, . . . the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, . . . the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

that "Section 78u-6(a)(6) identifies *who* is protected, while Section 78u-6(h)(1)(A)(iii) identifies *what* they are protected for doing." *Id.* at *4–5. However, the court concluded the defendant's view was "by no means mandatory," preferring to adopt the view in *Egan* that the protection provision "may also be viewed as 'a narrow exception to [the] . . . definition of a whistleblower.'" *Id.* at *5 (quoting *Egan*, 2011 WL 1672066, at *5). In sum, the *Murray* court found that "[t]he existence of these 'competing, plausible interpretations' of the statutory provisions compels the conclusion that 'the statutory text is ambiguous in conveying Congress's intent.'" *Id.* (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 120 (2d Cir. 2007)).

Within two months of the *Murray* decision, the Fifth Circuit applied the two-step inquiry of *Chevron* and concluded that Congress had in fact spoken unambiguously on the question of who was protected by the DFA whistleblower provision. *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620 (5th Cir. 2013). The Fifth Circuit determined that courts must answer two questions in sequence: (1) who is protected, and (2) what actions by protected individuals are protected. *Id.* at 625. As to who is protected, the Fifth Circuit held that the plain language of the "whistleblower" definition, 15 U.S.C. § 78u-6(h)(1)(A), creates "only one category of whistleblowers: individuals who provide information relating to a securities law violation to the SEC." *Asadi*, 720 F.3d at 625. The court noted that the language of the whistleblower protection provision prohibits employers from discharging "a *whistleblower*," a defined term, instead of an "'individual' or 'employee.'" *Id.* at 626. Thus, to give effect to this word choice, the *Asadi* court found no conflicting definitions of "whistleblower." *Id.* at 627. It provided an example wherein its interpretation of the statute allows for protection of an employee who reports violations to the SEC and to his company's CEO simultaneously and is fired by the CEO

who is not yet aware of the disclosure to the SEC.  *Id.*  Because the *Asadi* court found the statute

to be unambiguous, it rejected the SEC interpretation in Rule 21F-2.  *Id.* at 630.

Two other district courts have since followed the Fifth Circuit's interpretation in *Asadi*.

*See Banko v. Apple Inc.*, No. CV 13-02977 RS, 2013 U.S. Dist. LEXIS 149646, at *13–18 (N.D.

Cal. Sept. 27, 2013); *Wagner v. Bank of Am. Corp.*, No. 12-cv-00381-RBJ, 2013 WL 3786643,

at *4–6 (D. Colo. July 19, 2013).  However, several courts—including three in this district—

have either declined to follow the Fifth Circuit or declined to rule on the issue.  *See Khazin v. TD*

*Ameritrade Holding Corp.*, No. 13-4149 (SDW) (MCA), 2014 WL 940703, at *6 (D.N.J. Mar.

11, 2014) (agreeing with majority of district courts that DFA is "ambiguous with respect to who

qualifies as a whistleblower for purposes of the anti-retaliation provision"); *Azim v. Tortoise*

*Capital Advisors, LLC*, No. 13-2267-KHV, 2014 WL 707235, at *2–3 (D. Kan. Feb. 24, 2014)

(holding that proposed amended complaint was not futile on DFA whistleblower claim where

plaintiff allegedly complained to defendant's human resources department about securities

violations); *Ahmad v. Morgan Stanley & Co.*, No. 13 Civ. 6394 (PAE), 2014 WL 700339, at *4

n.5 (S.D.N.Y. Feb 21, 2014) (publication in F. Supp. 2d pending) (finding DFA whistleblower

protection statute ambiguous and deferring to SEC's "reasonable interpretation," but holding

complaint to be otherwise deficient); *Rosenblum v. Thomson Reuters (Mkts.) LLC*, No. 13 Civ.

2219 (SAS), 2013 WL 5780775, at *4–5 (S.D.N.Y. Oct. 25, 2013) (publication in F. Supp. 2d

pending) (declining to follow *Asadi* and finding ambiguity in conflict between definitional

provision and anti-retaliation provision); *Meng-Lin Liu v. Siemens A.G.*, No. 13 Civ. 317 (WHP),

2013 WL 5692504, at *5–7 (S.D.N.Y. Oct. 21, 2013) (publication in F. Supp. 2d pending)

(noting conflicting authority but declining to reach the issue as unnecessary to determine that

whistleblower protection does not apply outside the U.S.); *Ellington v. Giacoumakis*, No. 13-

22

11791-RGS, 2013 WL 5631046, at *2–3 (D. Mass. Oct. 16, 2013) (publication in F. Supp. 2d

pending) (adopting SEC interpretation as more persuasive than *Asadi*).

"[T]he plainness or ambiguity of statutory language is determined by reference to the

language itself, the specific context in which that language is used, and the broader context of the

statute as a whole." *Virgilio v. City of New York*, 407 F.3d 105, 112 (2d Cir. 2005) (quoting

*Robinson v. Shell Oil Co.*, 519, U.S. 337, 341 (1997)), *quoted in Rosenblum*, 2013 WL 5780775,

at *5 n.44.  Considering the context of 15 U.S.C. § 78u-6, the Court finds that the statute does

not clearly and unambiguously limit whistleblower protection to individuals who report

violations to the SEC where the anti-retaliation provision simultaneously incorporates SOX-

protected reporting to supervisors.  Thus, the Court finds the reasoning as delineated in *Murray*

and other courts in this district persuasive because the two provisions read in conjunction create

a potential conflict.  Furthermore, the SEC's interpretation of 15 U.S.C. § 78u-6 as expressed in

Rule 21F-2 is a reasonable reading of the statute that resolves the ambiguity.  *See Murray*, 2013

WL 2190084, at *7.  As *Murray* noted, the SEC in revising and refining the rule "considered the

policy issues involved and exercised judgment" in making changes to "'better achieve the goals

of the statutory whistleblower program and advance effective enforcement of the Federal

securities laws.'"  *Id.* at *6–7 (quoting Securities Whistleblower Incentives & Protections, 76

Fed. Reg. at 34,300).

Accordingly, Plaintiff's motion to amend the complaint must be granted as to the DFA

claim under 15 U.S.C. § 78u-6(h)(1), as such an amendment would not be futile.

## VI. CONCLUSION

For the stated reasons, Plaintiff's cross-motion to amend the complaint is GRANTED and Defendant's motion for judgment on the pleadings is DENIED.  The Clerk of Court is respectfully requested to terminate the motions (Docs. 31 & 46).  Plaintiff is directed to file its second amended complaint on or before May 31, 2014.


Dated: May 8, 2014                                SO ORDERED:
        White Plains, New York

                                        _____
                                        NELSON S. ROMÁN
                                        United States District Judge