```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JENNIFER YANG,                                              :
                                                            :
                        Plaintiff,                          :     13-cv-2073 (NSR)
        -against-                                           :     OPINION AND ORDER
                                                            :
NAVIGATORS GROUP, INC.,                                     :
                                                            :
                        Defendant.                          :
-----------------------------------------------------------X
```

NELSON S. ROMÁN, United States District Judge:

Before the Court is Defendant Navigators Group, Inc.'s ("Defendant") motion for summary judgment on Plaintiff Jennifer Yang's ("Plaintiff") claims for violations of the anti-retaliation provision of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, and the whistleblower protection provision of the Dodd-Frank Act ("DFA"), 15 U.S.C. § 78u-6(h)(1). For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

The Court has reviewed the parties' Local Civil Rule 56.1 statements, declarations, and accompanying exhibits. The facts as presented in the parties' submissions, construed liberally and in the light most favorable to Plaintiff, largely track the facts as stated by the Court in its Memorandum Opinion and Order issued in this matter in connection with Defendant's Rule 12(c) motion for judgment on the pleadings. (Docket No. 56.) The Court therefore assumes the parties' general familiarity with the pertinent facts and procedural history of this matter, but highlights certain facts relevant to the resolution of this motion below.

Plaintiff was hired by Defendant as its Chief Risk Officer and began work on June 25, 2012. (Pl.'s Opp. to Def.'s Local Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s



56.1") ¶ 4.)  Prior to joining Defendant, Plaintiff worked at AIG for over five years.  (*Id.* ¶ 1.) Plaintiff reported directly to Defendant's Chief Financial Officer ("CFO"), Ciro DeFalco.

At multiple times during her employment, Plaintiff contends that she alerted DeFalco of certain misrepresentations concerning Defendant's risk models and risk sub-committees, which were illegal and constituted shareholder fraud.  (Declaration of Jennifer Yang ("Yang Decl.") ¶ 40(c).)  Defendant asserts that Plaintiff never stated in any email, memorandum, or document that she thought Defendant had engaged in anything "illegal," including "fraud" or "shareholder fraud."  (Def.'s 56.1 ¶¶ 10-12.)  Plaintiff admits that she never stated Defendant did anything "illegal," but asserts that she did state Defendant engaged in "fraud" or "shareholder fraud."  (Pl.'s 56.1 ¶¶ 10-12.)  Plaintiff cites to a number of documents as evidence that she raised issues concerning shareholder fraud to DeFalco.  (Yang Decl. ¶ 40(c) (citing Declaration of Daniel J. Kaiser ("Kaiser Decl."), Exs. 1, 4, 8, 22, and Declaration of A. Michael Weber ("Weber Decl."), Exs. 2, 7.))

Plaintiff also testified that she emailed Defendant's Chief Executive Officer ("CEO") Stanley Galanski on October 25, 2012, roughly one week prior to her termination, because she was "'so concerned' that 'something untrue' was being presented to [Defendant's] Board of Directors and the rating agencies, thereby 'constitut[ing] shareholder fraud.'"  (Pl.'s 56.1 ¶ 18 (citing Weber Decl., Ex. 1, at 202:16-21.))

Finally, Plaintiff also asserts that she alerted Defendant's General Counsel, Bruce Byrnes, that, among other issues, Defendant's SEC filings did not accurately represent Defendant's risk management programs and its risk sub-committees.  (Yang Decl. ¶ 26.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

As discussed above, Plaintiff asserts whistleblower claims under SOX and the DFA arising out her termination for purportedly complaining of shareholder fraud and violations of SEC rules and regulations. Although these claims arise out of the same set of operative facts, the Court will address each claim in turn.

**1. Claims Under SOX**

SOX prohibits publicly traded companies from, *inter alia*, discharging an employee: because of any lawful act done by the employee—

> (1) to provide information . . . regarding any conduct which the employee *reasonably believes* constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], *any* rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information . . . is provided to . . .
>       . . .

>   (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct) . . . .

18 U.S.C. § 1514A(a)(1)(C) (emphasis added). Plaintiff bears the initial burden of establishing a *prima facie* case under § 1514A, *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 441 (S.D.N.Y. 2013) (quoting *Day v. Staples, Inc.*, 555 F.3d 42, 53 (1st Cir. 2009), and must prove by a preponderance of the evidence that: "(1) she engaged in protected activity; (2) the employer knew that she engaged in the protected activity; (3) she suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action." *Bechtel v. Admin. Review Bd.*, 710 F.3d 443, 447 (2d Cir. 2013) (quoting *Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009)) (internal quotation marks omitted); *accord* 49 U.S.C. § 42121(b), *made applicable by* 18 U.S.C. § 1514A(b)(2); 29 C.F.R. 1980.104(e)(2). "To demonstrate that a plaintiff engaged in a protected activity, a plaintiff must show that [s]he had both a subjective belief and an objectively reasonable belief that the conduct [s]he complained of constituted a violation of relevant law." *Leshinsky*, 942 F. Supp. 2d at 444 (internal quotation marks and citations omitted).

Once Plaintiff establishes her *prima facie* case, the burden shifts to Defendant, which may "prevail[] only if it can prove by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of that protected behavior." *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 CIV. 3824, 2015 WL 5920019, at *10 (S.D.N.Y. Oct. 9, 2015) (internal quotation marks omitted). At the summary judgment stage:

>   a plaintiff need only demonstrate that a rational factfinder could determine that [the] Plaintiff has made [her] prima facie case. Assuming a plaintiff does so, summary judgment is appropriate only when, construing all of the facts in the employee's favor, there is no genuine dispute that the record *clearly and convincingly* demonstrates that the adverse action would have been taken in the absence of protected behavior. Thus, the

5

> defendant's burden under Section 806 [SOX's whistleblower section] is notably more than under other federal employee protection statutes, thereby making summary judgment against plaintiffs in Sarbanes–Oxley retaliation cases a more difficult proposition.

*Id.*, at *11 (quoting *Leshinsky*, 942 F. Supp. 2d at 441) (emphasis in original).  Although Plaintiff pleaded enough facts to survive Defendant's motion for judgment on the pleadings, the Court must now determine, following its review of the evidence in this case, whether a rational fact finder could determine that Plaintiff established her *prima facie* case.

### a. Allegations Concerning Investment Risk Models

Excluding Plaintiff's own deposition testimony and statements made in her own Declaration, Plaintiff cites approximately fourteen documents purporting to show that Plaintiff complained to her superiors about misrepresentations of Defendant's "market risk without proper disclosure," which was "illegal and constituted shareholder[] fraud." (*See* Pl.'s Opp. at 14.)  A closer examination of Plaintiff's purported evidence of her complaints yields a very different picture.

Of the fourteen documents proffered by Plaintiff, only four appear to contain statements actually made by or attributed to Plaintiff. (*Id.*, at Kaiser Decl., Exs. 1, 22, and Weber Decl., Exs. 2, 7.)  Many of the documents consist of presentations or reports made *before* Plaintiff was employed by Defendant and therefore cannot demonstrate that Plaintiff made the necessary complaints to her superiors. (*See*, *e.g.*, *id.* at Kaiser Decl. Exs. 7, 12, 13.)  And the documents that contain Plaintiff's statements to her superiors, even construed liberally and in her favor, fail to raise any indication, let alone explicitly state, that Plaintiff was complaining of any violations enumerated in SOX – mail fraud, wire fraud, bank fraud, securities fraud, any rule or regulation of the SEC, or any provision of Federal law relating to fraud against shareholders.

For example, Plaintiff cites to Exhibit 1 of the Kaiser Declaration, which contains Plaintiff's review of one of Defendant's risk analyses. Although Plaintiff raised a number of concerns regarding the usefulness of the risk analysis, including its apparent limitations in modeling certain types of investments, nowhere in Plaintiff's email did she state, implicitly or explicitly, that the analysis violated any of the laws, rules, or regulations enumerated in SOX. Nor did Plaintiff indicate that Defendant's conduct was illegal in any way, without regard to the enumerated violations in SOX. Even construed liberally, on their face, Plaintiff's statements fail to demonstrate a subjective belief that Defendant's conduct was illegal. At best, Plaintiff's statements match her conclusion in her email – that the risk analysis did not consist of "the stressed scenarios that can provide [the] right picture [of] what would happen to our investment portfolio." (Kaiser Decl., Ex. 1, at NAV0057473.)

Similarly, in Exhibit 22 of the Kaiser Declaration, Plaintiff again repeated her concerns about the risk analysis, but failed to imply or explicitly state that Defendant did anything illegal. (*Id.*, Ex. 22 ("Reviewed VaR analysis from Diane Coogan. Need to revise the analysis to make it more accurate. Follow up meeting had[sic] been scheduled.")

Even Plaintiff's email of October 25, 2012 – which she testified that she sent to Defendant's CEO and CFO because she was "'so concerned' that 'something untrue' was being presented to [Defendant's] Board of Directors and the rating agencies, thereby 'constitut[ing] shareholder fraud'" (Pl.'s 56.1 ¶ 18) (citing Weber Decl., Ex. 1, at 202:16-21) – contains absolutely no indication that Plaintiff had any concerns related to shareholder fraud. (*See* Weber Decl., Ex. 12.) In this email, which summarized Plaintiff's thoughts on a risk analysis of Defendant's investment portfolio, Plaintiff explained that she needed to "clarify some of the results," which "supprised[sic]" her; she then included a number of questions for the CEO and

7

CFO related to understanding the reports included in the analysis. (*Id.*) Even construed liberally and in Plaintiff's favor, there is simply no reading of this email that would permit a rational fact finder to determine that Plaintiff told Defendant's CEO and CFO that anything untrue was being communicated to Defendant's Board of Directors or the rating agencies, let alone that it constituted shareholder fraud.

As late as October 31, 2012, just days before her termination, Plaintiff emailed Defendant's CFO to explain that certain of Defendant's risk models had "limitations on valuing some asset classes." (Weber Decl., Ex. 2, at JY 000099.) Plaintiff noted that Defendant's risk management framework needed "some improvements" and had certain "gaps," (*id.* at JY 000099-101), but again Plaintiff failed to raise any complaints related to the enumerated violations in SOX, and instead concluded that "the preliminary results confirmed that the risk of [the] investment portfolio is well below [Defendant's] current risk appetite for the investment risk." (*Id.* at JY 000102.)

After a review of the proffered evidence, construed liberally and in Plaintiff's favor, at best Plaintiff has shown that she believed Defendant's risk models were not wholly adequate to monitor its investment portfolio. But such a belief on its own is insufficient to establish that Plaintiff engaged in protected activity and that Defendant knew she engaged in such activity. With the exception of Plaintiff's own self-serving testimony, there is not a single piece of evidence that corroborates her allegation that she complained to her superiors about misrepresentations of Defendant's "market risk without proper disclosure," which was "illegal and constituted shareholder[] fraud." (*See* Pl.'s Opp. at 14.) Instead, the evidence presented here, relied on by both Plaintiff and Defendant in support of their respective arguments, shows at

most that Plaintiff believed there were certain limitations and gaps in Defendant's risk models, but nothing that comes close to alleging shareholder fraud.

It is well settled that at the summary judgment stage, after a defendant has shown that a plaintiff cannot produce admissible evidence to support its claim, a plaintiff is required to proffer additional evidence showing there is a genuine issue for trial. Plaintiff has failed to do so here. Accordingly, Defendant's motion for summary judgment is granted on Plaintiff's SOX claim arising from her purported complaints concerning Defendant's investment risk models.

### b. *Allegations Concerning Risk Sub-Committees*

Plaintiff's second alleged complaint under SOX – that there were misrepresentations made related to the nature and existence of Defendant's risk management protocols, and specifically that certain risk management committees failed to meet – is significantly less cumbersome for the Court to analyze. Construing the evidence in the light most favorable to Plaintiff, it is clear that a rational factfinder could determine that Plaintiff satisfied the first three elements of her *prima facie* case with respect to this theory.

Plaintiff engaged in protected activity when she told Bruce Byrnes, Defendant's General Counsel, that Defendant was mispresenting how often certain risk sub-committees met in its SEC proxy statement, thus implicating, at a minimum, potential violations of SEC rules and regulations.[1] Defendant concedes that Plaintiff raised an issue with respect to the sub-committees, (Def.'s Mot. at 3-4), although it disputes that the complaint concerned allegations of shareholder fraud. (*Id.* at 4.) As a result of Plaintiff's complaint, Byrnes checked the representation in the proxy statement and purportedly confirmed it was not a misrepresentation.

---

[1] The Court finds that Plaintiff's other purported complaints concerning the risk sub-committees and Defendant's risk management framework, other than the complaint made to Byrnes discussed here, do not establish that Plaintiff engaged in protected activity.

9

Defendant also asserts that the sub-committees in fact met during Plaintiff's tenure with Defendant, making clear that there was no misrepresentation in the proxy statement. Nevertheless, the simple fact remains that Plaintiff raised a concern related to the veracity of Defendant's SEC proxy statement and Defendant reviewed its filings to confirm that the statement did not include any misrepresentations. Plaintiff's complaint concerned Byrnes enough, despite Defendant's apparent contentions to the contrary, to spur him to review Defendant's filing. There is thus no dispute that Plaintiff has provided sufficient evidence for a rational fact finder to determine that Plaintiff engaged in a protected activity and that Defendant knew Plaintiff engaged in such an activity, satisfying the first two prongs her *prima facie* case. Plaintiff was terminated two weeks after her complaint, purportedly for performance reasons, which constitutes an unfavorable action and satisfies the third prong of her *prima facie* case.

The final question for the Court is whether the protected activity was a contributing factor in Plaintiff's termination. Plaintiff contends that the record lacks any evidence of Plaintiff's inadequate job performance; that the temporal proximity of Plaintiff's complaint and her termination is evidence that her complaint was at least a contributing factor to her termination; and that there is substantial evidence of "pretext" for Plaintiff's termination. (Pl.'s Opp. at 16-25.) Defendant argues that Plaintiff has presented absolutely no evidence that her complaints contributed, in whole or in part, to her termination, and that her termination was due to her poor job performance, particularly her purportedly terrible October 26, 2012 presentation. (Def.'s Reply at 2-3, 6-7.) Following a thorough review of the evidence submitted to the Court by both parties, there is simply nothing in the record to support the notion that Plaintiff's complaint to Byrnes contributed directly to her termination. Absent her own testimony, none of the emails, documents, and testimony of other individuals cited by Plaintiff provides a basis for the Court to

10

infer, let alone a rational fact finder to decide, that Defendant terminated Plaintiff's employment as a result of her complaint to Byrnes.  This leaves only Plaintiff's argument based on temporal proximity for the Court to consider.

"Temporal proximity is an important, though not necessarily determinative, piece of evidence concerning the motivating factors behind terminating an employee." *Sharkey*, 2015 WL 5920019, at *13 (quoting *Leshinsky*, 942 F. Supp. 2d at 450.  When relying solely on temporal proximity to establish causation, the proximity of the two incidents "must be very close."  *Id.* (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).  Periods ranging from twelve days to one month between whistleblowing activity and an unfavorable action have been found to be "very close" in time.  *Id.*  Temporal proximity does not, however, "compel a finding of causation, particularly when there is a legitimate intervening basis for the adverse action."  *Fraser v. Fiduciary Trust Co. Int'l*, No. 04 CIV. 6958 (PAC), 2009 WL 2601389, at *6 (S.D.N.Y. Aug. 25, 2009) *aff'd*, 396 F. App'x 734 (2d Cir. 2010) (quoting *Tice v. Bristol–Myers Squibb Co.*, 2006–SOX–20, 2006 WL 3246825, at *20 (U.S.D.O.L. Apr. 26, 2006)).

The Southern District of New York recently dealt with the issue of temporal proximity in *Sharkey v. J.P. Morgan Chase & Co.*, 2015 WL 5920019 (S.D.N.Y. Oct. 9, 2015).  In *Sharkey*, Judge Sweet found that although the plaintiff had engaged in protected activity – raising issues to her superiors concerning a client's potential fraud and money laundering – her termination for lying to a client provided "a legitimate intervening basis for the adverse action sufficient to defeat her claim under SOX."  *Id.* at *14 (quoting *Fraser*, 2009 WL 2601389, at *6).  Plaintiff's failure in *Sharkey* to proffer any contrary evidence indicating that her complaint was a

contributing factor to her termination required the Court to grant summary judgment to the defendant.

Here, Plaintiff's termination occurred less than two weeks after her complaint to Byrnes about the risk sub-committees, raising an inference that her complaint contributed, at least in part, to her termination. Nevertheless, Plaintiff's purportedly terrible presentation occurred in the intervening time between her complaint and her termination, weakening the inference that may be drawn from Plaintiff's complaint to Byrnes. To overcome this weakened inference of causation, Plaintiff needed to proffer evidence linking her termination to her complaint. The other evidence she proffered – including that she was not afforded progressive discipline; that the reason for her firing was her failure to fit into Defendant's culture; and that she raised the same risk sub-committee issues to DeFalco[2] – simply does not connect her complaint to Byrnes to her termination in any way. At best, it raises the absence of certain pieces of evidence, but Plaintiff is required to affirmatively connect her complaint, by inference or otherwise, to her termination. She has plainly failed to do so here.

The evidence presented by Defendant makes clear that Plaintiff was fired for her performance following her October 26, 2012 presentation to Defendant's senior executive team. DeFalco testified that "the meeting was an absolute disaster," (Weber Decl., Ex. 3, at 73:7-8), and that there was consensus among the senior executive team that Plaintiff should be fired. (*Id.*, at 77:8-25.) Defendant's CEO, Stanley Galanski, testified to the same. (Weber Decl., Ex. 18, at

---

[2] Even the statements Plaintiff made to DeFalco about the risk sub-committees fail to state what Plaintiff argues they do – Plaintiff merely states that she was rewriting the charters for certain committees and that certain committee meetings were canceled; she does not state or even imply that there were any violations of any law, rule, or regulation enumerated in SOX. (*See* Pl.'s Opp. at 21 (citing Kaiser Decl. 24 and Weber Decl. 7).) Nor on the face of the documents can the Court find that a rational fact finder could conclude that Plaintiff subjectively believed that anything unlawful was occurring. (*Id.*)

¶¶ 4-5.)  These statements are corroborated by Galanksi's memorandum to Terry Deeks, Defendant's founder, Board member, and principal shareholder, just three days after the meeting (Weber Decl., Ex. 22, at NAV0092854 (Plaintiff's "performance has been well below expectations and it appears we may need to make a change in this role . . . .), and Deeks' response that Plaintiff should be terminated.  (Weber Decl., Ex. 23, at NAV0092876.)

Conspicuously absent from the evidence proffered by both parties in this matter is any indication that Plaintiff was terminated in whole or in part for her complaint to Byrnes about the risk sub-committees.  There is simply nothing that Plaintiff presents that refutes DeFalco's or Galanski's purported reasons for her termination.  Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation for her complaint based on purported misrepresentations in Defendant's SEC proxy statement.

**2. Claims Under The DFA**

The DFA provides that "[n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower—

(i) in providing information to the Commission in accordance with this section;

(ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or

(iii) in making disclosures that are required or protected under the Sarbanes–Oxley Act of 2002 (15 U.S.C. 7201 et seq.), the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of title 18, United States Code, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u–6(h)(1)(A).  "In order to prevail on a DFA retaliation claim, a plaintiff must show: (1) [s]he reported an alleged violation to the SEC or another entity, or internally to

management; (2) [s]he was retaliated against for reporting the alleged violation; (3) the disclosure of the alleged violation was made pursuant to a rule, law, or regulation subject to the SEC's jurisdiction; and, (4) the disclosure was required or protected by that rule, law, or regulation within the SEC's jurisdiction." *Genberg v. Porter*, 935 F. Supp. 2d 1094, 1105 (D. Colo. 2013) *aff'd in part, appeal dismissed in part on other grounds*, 566 F. App'x 719 (10th Cir. 2014) (*citing Nollner v. Southern Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 995 (M.D. Tenn. 2012).

Although the elements of a whistleblower retaliation claim brought under the DFA are slightly different from a whistleblower retaliation claim brought under SOX, the facts of this case require the Court to reach the same result on both claims. As described in detail above, Plaintiff failed to report any alleged violations concerning Defendant's investment risk models to the SEC or internally to Defendant's management, and therefore cannot establish the first element of her first DFA claim. Likewise, Plaintiff's failed to show that a rational fact finder could determine that her complaint concerning Defendant's SEC proxy statements contributed, at least in part, to her termination. Thus, Plaintiff cannot establish the second element of her second DFA claim – that she was retaliated against for reporting the alleged violation.

Accordingly, Defendant is granted summary judgment on Plaintiff's DFA claims.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 84 and to close the case.

Dated: January 4th, 2016
White Plains, New York

SO ORDERED:

NELSON S. ROMAN
United States District Judge