UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JENNIFER YANG,

                         Plaintiff,

-against-

NAVIGATORS GROUP, INC.,

                         Defendant.

No. 13 Civ. 2073 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

In anticipation of trial scheduled to begin on May 30, 2017, on Plaintiff Jennifer Yang's claims for violations of the anti-retaliation provision of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, and the whistleblower protection provision of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h)(1), by her former employer Defendant Navigators Group, Inc., Plaintiff and Defendant have each moved *in limine* to preclude the other from introducing certain evidence at trial and to allow certain testimony to be received via live videoconferencing rather than in person.

For the following reasons, the motions are GRANTED in part and DENIED in part.

## OVERVIEW[1]

Plaintiff's motions *in limine* (ECF No. 112) seek to preclude a) defense expert Chad Staller from testifying at trial with regard to Plaintiff's efforts to mitigate her damages and

---

[1] The Court presumes the parties' familiarity with the facts previously summarized in its Opinions in this matter and will not restate them here. *See generally Yang v. Navigators Grp., Inc.*, 18 F. Supp. 3d 519 (S.D.N.Y. 2014) (denying Defendant's motion for judgment on the pleadings and granting Plaintiff's motion to amend her complaint); *Yang v. Navigators Grp., Inc.*, 155 F. Supp. 3d 327 (S.D.N.Y. 2016) (opinion on motion for summary judgment), *vacated and remanded*, No. 16-77-CV, --- F. App'x ----, 2016 WL 7436485, at *2 (2d Cir. Dec. 22, 2016) (finding Plaintiff had "adequately placed the[] issues" of whether she engaged in protected activity and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/18/2017

b) defense witnesses from testifying at trial via live videoconferencing.[2] Defendant's motion *in limine* (ECF No. 115) seeks to preclude Plaintiff from introducing any evidence related to her alleged reputational loss.[3] As a preliminary matter, by letter dated May 5, 2017, Plaintiff noted she had "withdrawn her reputation loss claim which was the subject of Defendant's motion[.]" (Pl. Reply at 2.) Thus, Defendant's unopposed motion is moot: Plaintiff has agreed to not introduce any exhibits or testimony relating to any alleged reputational loss, and the Court will enforce that agreement.

The remaining issues for the Court to decide are whether the defense expert should be permitted to testify at trial regarding the sufficiency of Plaintiff's mitigation efforts and whether certain defense witnesses should be permitted to testify via live video-conferencing.

## LEGAL STANDARDS GOVERNING PRELIMINARY RULINGS ON THE ADMISSIBILITY OF EVIDENCE

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation and quotation marks omitted); *see generally Luce v. United States*, 469 U.S. 38 (1984). Upon such a motion, the Court is called upon "to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d

---

whether that activity or intervening events led to her termination "in dispute such that a reasonable factfinder could conclude her protected activity contributed to her termination").

[2] The parties have fully briefed these issues. (*See* Pl. Mem. in Supp. of Mot. ("Pl. Mem."), ECF No. 113 & Ex. A ("Staller Report"); Def. Mem. in Opp'n to Mot. ("Def. Opp'n"), ECF No. 118; Pl. Reply to Def. Opp'n ("Pl. Reply"), ECF No. 119.)

[3] Although Defendant briefed this issue, Plaintiff did not oppose it. (*See* Def. Mem. in Supp. of Mot. ("Def. Mem."), ECF No. 116; Decl. A. Michael Weber in Supp. of Def. Mot. ("Weber Decl."), ECF No. 117.)

2

461, 467 (S.D.N.Y. 2005). Only evidence that is "clearly inadmissible on all potential grounds" should be excluded on a motion *in limine*. *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (internal citations omitted).

The Court generally looks to Rules 401, 402, and 403 of the Federal Rules of Evidence to determine whether the contested evidence is admissible at trial. Under Rule 402, only relevant evidence is admissible. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Though the "standard of relevance established by the Federal Rules of Evidence is not high," *United States v. Southland Corp.*, 760 F.2d 1366, 1375 (2d Cir. 1985), the Court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008) (citing *United States v. LaFlam*, 369 F.3d 153, 155 (2d Cir. 2004)); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)) ("Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403").

As the Court does not have the benefit of viewing the proposed evidence in the context of trial, an *in limine* ruling may be "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [party's] proffer." *Paredes*, 176 F. Supp. 2d at 181 (quoting *Luce*, 469 U.S. at 41). Similarly, "[i]f the potential relevance of

3

evidence is uncertain prior to trial, the court may choose to reserve judgment." *Goodwine v. National R.R. Passenger Corp.*, No. 12 Civ. 3882 (TLM), 2014 WL 1010928, at *1 (E.D.N.Y. Mar. 17, 2014) (citing *Bonilla v. Janovick*, No. 01 Civ. 3988 (SJF) (ETB), 2007 WL 3047087, at *2 (E.D.N.Y. Oct. 16, 2007)).

## DISCUSSION

### I. Mitigation Expert

A defendant employer bears the evidentiary burden to show failure to mitigate by the employee. *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998). A wrongfully terminated employee "'must use reasonable diligence in finding other suitable employment,' which need not be comparable to [her] previous positions." *Id.* (internal citation omitted). "Generally speaking, this requires the employer to show that suitable work exists in the marketplace and the discharged employee 'has not made reasonable efforts to find it.'" *Roniger v. McCall*, No. 97 Civ. 8009 (RWS), 2000 WL 1191078, at *3 (S.D.N.Y. Aug. 22, 2000) (quoting *Greenway*, 143 F.3d at 53). Nevertheless, "there is an exception to the requirement that the employer establish the availability of comparable employment 'if it can prove that the employee made no reasonable efforts to seek such employment.'" *Id.* (quoting *Greenway*, 143 F.3d at 54). Clearly testimony relating to an employee's efforts—and the reasonableness of those efforts—to secure alternative employment is relevant to and thus potentially admissible on the issue of mitigation.

Plaintiff's motion to preclude proffered expert Staller's testimony is premised on his purported lack of expertise regarding job searches and the current lack of sworn testimony regarding the facets of Plaintiff's particular job search. (*See* Pl. Reply at 1.) Plaintiff's one-page argument, though sounding vaguely like a *Daubert* motion, does not cite *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993), its progeny, or Federal Rule of Evidence 702.

4

Instead, Plaintiff simply argues in a conclusory fashion that Staller's opinion testimony consists of "pure conjecture," given his lack of experience and the lack of available information upon which to base such an opinion, and would "intrude upon the proper province of the jury as fact finder." (Pl. Mem. at 2.)[4] Defendant counters that "Mr. Staller analyzed various guidelines by the U.S. Department of Labor and the New Jersey Department of Labor regarding the elements of a reasonably diligent search, and then analyzed Plaintiff's job search based on such guidelines." (Def. Opp'n at 2.)

To be sure, the "guidelines" referenced in the proffered expert report were designed for use by the general public, undercutting Plaintiff's argument that Staller needs special qualifications to perform his analysis of Plaintiff's mitigation efforts. (*See* Staller Report at 4-5.) But "however simple [a] method or theory," it must be accompanied by "some explanation thereof so that it can be evaluated as to its reliability." *Roniger*, 2000 WL 1191078, at *3. Having reviewed the report and the analyses and opinions contained therein, the Court concludes that certain aspects of Staller's proffered testimony are sufficiently relevant and reliable to be introduced at trial, while other portions of the anticipated testimony are irrelevant, unreliable, or unduly prejudicial based on the inapposite analysis undertaken.

Staller may testify at trial regarding his analysis of Plaintiff's job search as compared specifically to one set of guidelines. In his report, Staller outlined Plaintiff's employment history, qualifications, and salary history. Then, Staller provides a summary of Plaintiff's attempts to seek employment based on information obtained during discovery. Finally, referring to an United States Department of Labor publication from 1993 (updated by the New York State

---

[4] Plaintiff does not contest the other areas of anticipated testimony, such as Staller's critique of Plaintiff's proposed damages calculations and assumptions.

5

Department of Labor in 2006) that provides out-of-work professionals with advice on how to secure employment ("U.S. D.O.L. Guidelines"),[5] Staller opines that Plaintiff's documented job search was not diligent when compared to those recommendations. (*See* Staller Report at 7 (pointing to Plaintiff's failure to "network[] with former employers, colleagues, professional associations, and alumni organizations at [her alma maters]").) This straightforward and simplistic approach, which is surely subject to a vast number of critiques on cross-examination, nevertheless is sufficiently described to be evaluated by Plaintiff and this Court. Finding it sufficiently reliable, the Court will allow this portion of Staller's analysis, since it is relevant and may aid the trier of fact in determining whether Plaintiff was actively seeking comparable employment in order to mitigate her alleged damages. *See, e.g., Castelluccio v. Int'l Bus. Machines Corp.*, No. 09 Civ. 1145 (DJS), 2012 WL 5408420, at *3 (D. Conn. Nov. 6, 2012) (expert could "compare [plaintiff's] job search efforts to an industry standard for such job searches without substituting the expert's judgment for that of the jury").

In contrast, Staller provides no citation to the statistics used in forming his opinions regarding Plaintiff's expected period of unemployment post-termination. His apparent theory—comparing Plaintiff to *any* employee over the age of 25—is based on data which cannot be verified or analyzed. Therefore, any opinions based on that data are unreliable. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 157 (1999). Moreover, his use of a New Jersey guideline related to eligibility for unemployment benefits (*see* Staller Report at 5-6) is so inapposite to a thoughtful job-search undertaken by a professional with multiple degrees and over a decade of employment experience as to render any opinions based on that guideline unreliable and

---

[5] The "Job Search Guide" is available at https://labor.ny.gov/careerservices/findajob/tableco.shtm. Plaintiff did not address the applicability of this information to a search for jobs post-Great Recession.

6

irrelevant to the question of whether *this* Plaintiff was using reasonable diligence to find other *suitable* employment. *See Greenway*, 143 F.3d at 53. Such testimony, in contrast to the analysis based on the U.S. D.O.L. Guidelines, is inadmissible.

Finally, Defendant's expert will not be permitted to offer an opinion going to the heart of the ultimate question for the jury—whether Plaintiff's job search was in fact reasonable, diligent, active, or sufficiently vigorous. *See, e.g., Castelluccio*, 2012 WL 5408420, at *3 (defense expert was "not [] permitted to testify that [the plaintiff] did not conduct a 'diligent' job search after his discharge"); *Roniger*, 2000 WL 1191078, at *5 (court ruled that the defense expert would "not be permitted to testify to conclusions . . . [such as] whether [the plaintiff's] job search was 'reasonable,' 'active and proper,' 'vigorous,' 'serious,' and the like"); *Berk v. Bates Advertising USA, Inc.*, No. 94 Civ. 9140 (CSH), 1998 WL 726030, at *4 (S.D.N.Y. Oct. 14, 1998) (court did "not permit [the defendant's expert] to express an opinion as to whether plaintiff's particular efforts to find employment were reasonable"); *but see* Fed. R. Evid. 704 ("An opinion is not [automatically] objectionable just because it embraces an ultimate issue"). The Court is confident that "[t]he jury is capable of making that determination [based] on all the evidence [presented] and the Court's instructions, without the assistance of an expert witness" whose testimony on that point would be needlessly cumulative. *Berk*, 1998 WL 726030, at *4; *see* Fed. R. Evid. 403 & 702(a).

Therefore, Defendant's mitigation expert may offer testimony relating to Plaintiff's efforts to mitigate her damages, but only within these boundaries.

## II. Testimony via Video-conferencing

Defendant seeks to offer testimony from "Kartina Thomson and Angus Cameron [that] will [allegedly] contradict the testimony of Plaintiff that, while in London on business, she complained to them about securities fraud that was occurring in the United States." (Def. Opp'n

7

at 5.) Complaining of the burden and expense of flying these defense witnesses from England to the United States, Defendant seeks to invoke the good cause exception to live testimony under Federal Rule of Civil Procedure 43(a).

Rule 43(a) permits trial testimony by "contemporaneous transmission from a different location," *i.e.* by video conference or perhaps someday by holographic conference, "for good cause in compelling circumstances [] with appropriate safeguards." Otherwise, the general rule is that "witnesses' testimony must be taken in open court," *id.*, as the "opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." *Id.* at Advisory Committee Notes, 1996 Amendments; *United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("There is a strong preference for live testimony, long recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness."). The Advisory Committee Notes to the 1996 Amendments to Rule 43(a) explain that "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." *See Martal Cosmetics, Ltd. v. Int'l Beauty Exch. Inc.*, No. 01 Civ. 7595 (TLM) (JO), 2011 WL 887591, at *2 (E.D.N.Y. Mar. 11, 2011) (nevertheless denying a request for a witness located in London to testify remotely despite protracted issues securing his deposition testimony and previous requests for accommodations based on health issues).

Here, Defendant has made a cursory showing of "good cause" and provided even less with regard to the "compelling circumstances" or "appropriate safeguards" that accompany this request. This case does not represent one of genuine hardship or logistically impossibility. *See, e.g., Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 187 (S.D.N.Y. 2010) ("petitioner, who had been

8

unable to obtain a visa to travel to [the United States], testified via a live video link from London, England"); *Angamarca v. Da Ciro, Inc.*, 303 F.R.D. 445, 447 (S.D.N.Y. 2012) ("The legal infeasibility of attending a deposition or trial in person because of one's immigration status rises to the level of compelling circumstances"). Instead, Defendant argues it is "unreasonable to force these two witnesses to take off several days of work for a short direct and cross examination that may only span an hour each." (Def. Opp'n at 6.) Unfortunately, there are expenses involved in litigation. These witnesses are only listed on Defendant's witness list (*see* Joint Pre-Trial Order at 5, ECF No. 111), and Defendant has not demonstrated sufficiently compelling reasons to allow remote testimony, nor cited authority standing for the proposition that travel expense and inconvenience alone justifies foregoing the live crucible of cross-examination. *Cf. Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, No. 04 Civ. 10014 (PKL), 2009 WL 3111766, at *4 (S.D.N.Y. Sept. 28, 2009) (in contrast, a Court might justifiably be "concerned about the burden imposed on [a *non-party*] to travel from outside the United States to this forum to testify live").

Therefore, Defendant's witnesses must be present in Court during trial to testify.

## CONCLUSION

For the foregoing reasons, Defendant's motion *in limine* is DENIED AS MOOT. Plaintiff's motions *in limine* are GRANTED in part and DENIED in part: Defendant's mitigation expert testimony is preliminarily limited in accordance with this Opinion, and Defendant's witnesses may not testify via a live video feed. The Court respectfully directs the Clerk of the Court to terminate the motions at ECF Nos. 112 & 115. The parties are directed to appear at the previously scheduled final pretrial conference on May 19, 2017 at 10:30 a.m.

Dated: May 18, 2017
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge